UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 12 MISC 393

- - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR ORDERS AUTHORIZING THE
DISCLOSURE OF LOCATION DATA
RELATING TO A SPECIFIED WIRELESS
TELEPHONE

- - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT OF
APPLICATION
(Fed. R. Crim. P. 41; T. 18,
U.S.C., §§ 2703(c)(1)(A),
3103a and 3117; T. 28,
U.S.C., § 1651(a))

I, Justin Eckert, being first duly sworn, hereby depose and state as follows:

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 310-357-5229, Urban Fleet Mobile Identifier[1] 124*851*5167, IMSI 316010168988131, which has no subscriber information (the "SUBJECT TELEPHONE"), whose wireless telephone service provider is Sprint Nextel Communications (the "Service Provider").  The SUBJECT TELEPHONE is described herein and in Attachment A, and the location information to be seized is described herein and Attachment B.

---

[1]     The Urban Fleet Mobile Identifier is a unique number assigned to a phone for use with the Sprint Nextel Communications two-way radio service, Direct Connect.

2.    I have been a Special Agent with the Drug Enforcement Administration for approximately four years.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for the distribution of narcotics.  These investigations are conducted both in an undercover and overt capacity.  I have participated in investigations involving search warrants and arrest warrants.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  Because the purpose of this affidavit is limited to demonstrating probable cause for the requested warrant, it does not set forth all of my knowledge about this matter.  In addition, when I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

4.    Based on the facts set forth in this affidavit, there is probable cause to believe that FLETCHER SALEEM VOISIN has and is distributing and possessing with intent to distribute cocaine and using a communication facility and conspiring to do the same, in violation of 21 U.S.C. §§ 841(a), 843 and 846.

2

There is also probable cause to believe that VOISIN has used, and is currently using, the SUBJECT TELEPHONE to engage in the distribution and possession with intent to distribute cocaine and conspiracy to do the same. There is therefore probable cause to believe that the location information, including but not limited to E-911 Phase II data (or other precise location information) concerning the SUBJECT TELEPHONE (the "REQUESTED INFORMATION"),[2] as described in Attachment B, will constitute evidence of these criminal violations, and will facilitate surveillance and lead to the identification of co-conspirators involved in the commission of these offenses and additional locations used in the commission of these offenses.

**PROBABLE CAUSE**

5.    In August 2011, Special Agents of the Drug Enforcement Administration located in Arizona initiated an investigation into CARLOS SAVE-RENDON, who resides in Arizona, who was believed to be responsible for the smuggling and

---

[2] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the SUBJECT TELEPHONE at the start and end of any call or text message transmission. In requesting cell-site information, the government does not concede that such cell site records — routinely retained by wireless carriers as business records — may only be obtained via a warrant issued on probable cause. See In re Application, 632 F. Supp. 2d 202 (E.D.N.Y. 2008) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.); In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (same).

3

transportation of multi-kilogram quantities of cocaine from the Republic of Mexico into Arizona and subsequently to metropolitan destinations throughout the United States, including New York.

6.    On April 10, 2012, DEA agents received court authorization from Pima County Superior Court in Arizona to intercept wire communications of cellular telephone 520-258-3182, which is being utilized by SAVE-RENDON. Since that time, agents have intercepted numerous wire communications between that telephone and the SUBJECT TELEPHONE, which is being utilized by VOISIN. On April 13, 2012, DEA agents received court authorization from Pima County Superior Court in Arizona to receive location data for the SUBJECT TELEPHONE. That order expired on June 13, 2012.

7.    The following are among the wire communications that have been intercepted between SAVE-RENDON and VOISIN.

a.    On April 11, 2012, SAVE-RENDON called VOISIN on the SUBJECT TELEPHONE. SAVE-RENDON and VOISIN discussed an individual known as "99", who was later identified as BERNARDO CAMACHO-RAMIREZ. A confidential informant ("CI") has indicated that "99" is a truck driver who transports cocaine from Arizona to New York for the drug trafficking organization. During the conversation, VOISIN stated, referring to "99": "Here is the thing, all right? He wants to get . . . um . . . let's say five, but he says 'like just in case' well, he will, he already gave

4

him five so he already has five, you know what I mean? And it's like . . . I don't know why like he wants that upfront but he is pretty much getting paid before." SAVE-RENDON responded "Yeah, before the job, yeah." VOISIN then stated, "Yeah. So it's like half and half I mean . . . he asked us to loan the stuff, but I think he should just be good with it, whatever." I believe that VOISIN and SAVE-RENDON were discussing payment to CAMACHO-RAMIREZ in return for CAMACHO-RAMIREZ transporting cocaine to New York. Later in the call, VOISIN states, "yeah, um . . . it was a total of um, twelve, but I told him nine." I believe that when VOISIN stated that it was a total of twelve, but he told him nine, he was indicating that he had told CAMACHO-RAMIREZ that he would be transporting nine kilograms of cocaine, but he was, in fact, transporting twelve kilograms of cocaine. I know from my training and experience that drug traffickers often pay individuals who transport narcotics based on the total weight of the narcotics to be transported. Therefore, misrepresenting the amount of cocaine CAMACHO-RAMIREZ was transporting would allow VOISIN and SAVE-RENDON to pay him less for the trip.

b. On April 20, 2012, SAVE-RENDON again called VOISIN on the SUBJECT TELEPHONE. During this communication, VOISIN told SAVE-RENDON that "It'll be like, not this weekend or next weekend, so it you could come up from me. I won't have you probably, uh, by the middle of the week. I have almost

5

everything already. Know what I mean?" Carlos responded "Yeah. No, but I just wanted to pay, pay the loan. The loaner so I can uh, get you another one like tomorrow . . . because he might leave tomorrow, because he might leave Sunday." VOISIN responded "Yeah, I hear you. I hear you. You already saw '99', right?" SAVE-RENDON indicated he would see him in two hours. VOISIN then indicated that he was "getting five, okay?" I believe VOISIN is telling SAVE-RENDON when he will provide him money for cocaine and that SAVE-RENDON is indicating that he needs the money to pay off a loan used to purchase cocaine. I believe SAVE-RENDON is also indicating that a shipment of cocaine is likely to leave tomorrow or Sunday. I believe that when VOISIN indicated that he was "getting five" he meant five kilograms of cocaine.

     c. Approximately ten hours later, still on April 20, 2012, SAVE-RENDON again called VOISIN on the SUBJECT TELEPHONE. SAVE-RENDON asked VOISIN if he "sent for four?" VOISIN responded that he "sent for five." SAVE-RENDON then indicated that he was going to meet people later for the "loan." VOISIN replied that "probably I might be able to send out like half of it . . . more than likely about, probably like about . . . . I should be able to send out." SAVE-RENDON says he will send VOISIN "four". VOISIN states "Alright that would be cool. So I'm gonna try and get out at least yeah . . . get all that out tomorrow then, no problem." I believe that SAVE-RENDON and

VOISIN are discussing the shipment of cocaine and payment for cocaine. I believe that when SAVE-RENDON and VOISIN discussed "four" and "five" they were referring to four or five kilograms of cocaine that would be shipped to VOISIN. I believe that they were also discussing when VOISIN would send payment to SAVE-RENDON.

         d.   On April 21, 2012, VOISIN contacted SAVE-RENDON using the SUBJECT TELEPHONE. During the conversation, VOISIN states "I got caught up again today brother. I will definitely put that in there Monday morning." He goes on to state "Cause it's one o'clock already, you know what I'm saying and then most of the banks are closing around this time." I believe that VOISIN is referring to when he will deposit money into a bank account which SAVE-RENDON can withdraw as payment for cocaine.

         e.   On May 8, 2012, SAVE-RENDON contacted VOISIN on a different telephone ("PHONE 2") using Nextel Direct Connect two-way radio via that telephone's UFMI number. During the conversation, VOISIN indicated that he "got to it with what's his name? '99'" and states that he has "a little problem right now." VOISIN and SAVE-RENDON then had the following exchange:

VOISIN:          "How many was it that you sent over?"

SAVE-RENDON:   "Thirteen."

VOISIN:          "Out of all those . . . it had . . . well each one of them was short. Each one of them

7

was short, okay? All right? It had four of them. I got 980. Okay? 980 and four of them. The rest of them was 930, 940, and that's crazy?"

SAVE-RENDON:   "What? Which ones were they?"

VOISIN:        "The ones that was real short was ones that kinda . . . it was wrapped in a . . . in the . . . in the grey . . . the grey tape. The grey duct . . . the duct tape, and they were kind of twisted and . . . and . . . and bent up. You know what I'm saying? those are the ones that was real short. Real short. You can actually see where those niggas cut it and dig . . . dig . . . dig shit out. You know what I'm saying? I don't know who it is. If you all did it, or those niggas did it, but that is fucked up.

[ . . . ]

Well, this is the last time I'm thinking I'm fucking with Primo man. Because yo dude, almost all of them others was fucking cut open, digged out dog. I'm talking a mad fucking short son. You just imagine. Not even 990. I can settle with 990 because I know they come in short these days. I can settle with 990. But nine fucking thirty? 940? That's . . . that's . . . what the fuck! 60 gone? 70 gone? You know what I'm saying? Right now I got . . . I got stock everyone up. I took every one out and I put like . . . I put it up at 995 on each of them. You know what I'm saying? And you know how much I got left over dog? 600 grams. I have 600 grams! I have twelve and 600 grams. You understand what I saying?

I believe VOISIN was indicating that the packages of cocaine that he had received from SAVE-RENDON, which had been packaged in grey duct tape, had contained less than one kilogram (1000 grams) and that he was unhappy about this. VOISIN also discussed "Primo" during the conversation. The CI has indicated that "Primo" is a

source of cocaine for SAVE-RENDON.

  f. On May 26, 2012, VOISIN again called SAVE-RENDON using the Direct Connect feature of PHONE 2. SAVE-RENDON stated, "I already saw '99' and everything." VOISIN then asked "Uh Yeah,'bout to shoot out?" SAVE-RENDON replied "Yeah, he told me he was going to eat in the car." SAVE-RENDON later stated "I gave him, I told it was nine and a half and a total of twelve." He then said "I'm gonna try to het ahold of uh, the, the new load for, for next time." I believe SAVE-RENDON is indicating that CAMACHO-RAMIREZ has just left Arizona with a shipment containing twelve kilograms of cocaine for VOISIN and that SAVE-RENDON would start preparing the next load of cocaine.

  8. On May 29, 2012, Pennsylvania State Troopers stopped a truck driven by CAMACHO-RAMIREZ in Pennsylvania. CAMACHO-RAMIREZ consented to a search of the vehicle. During the search, officers found twelve kilograms of cocaine in a black Adidas duffle bag located in the cab of the truck. CAMACHO-RAMIREZ was placed under arrest and identified as a result of a fingerprint search. The arrest photograph of CAMACHO-RAMIREZ was then sent to the CI, who indicated it to be a picture of "99." While CAMACHO-RAMIREZ was being processed in the evening of May 29, 2012, CAMACHO-RAMIREZ's phone received numerous calls from PHONE 2, a phone being utilized by VOISIN.

9.    On May 30, 2012, SAVE-RENDON called VOISIN on the
SUBJECT TELEPHONE.  During the conversation, VOISIN and SAVE-
RENDON had the following exchange:

VOISIN:        Yo man, what's going on man? You try that
               dude's radio today?

SAVE-RENDON:   Yeah . . . it's just off . . . like no
               service or something.

VOISIN:        Yeah dude.  Homeboy didn't make it to the
               party last night.

SAVE-RENDON:   Uh . . . no . . . he hasn't called you or
               nothing?

VOISIN:        Nothing, nothing, nothing . . . last time I
               spoke to homeboy, was 5:45 yesterday
               afternoon.

[. . .]

SAVE-RENDON:   You don't know if he lost his phone or
               something or . . . ?

VOISIN:        I, how the hell am I going to know that?  He
               never showed up at the location either.

SAVE-RENDON:   Yeah?

VOISIN:        You know what I'm saying? I sat at that
               location for two hours.

SAVE-RENDON:   Yeah.

VOISIN:        You know what I'm saying?  When I spoke to
               him at 5:45, he said he would be there in two
               hours . . . two hours and 45 minutes.

SAVE-RENDON:   Yeah.

VOISIN:        You feel me? And that would have been . . .
               8:30.  I've been there from 8:00 til 10:40.
               You know what I'm saying?

10

I believe VOISIN and SAVE-RENDON were discussing the fact that
CAMACHO-RAMIREZ had not arrived to meet VOISIN with the twelve
kilograms of cocaine that CAMACHO-RAMIREZ had been transporting.

      10.  A review of location data for the SUBJECT
TELEPHONE shows that on May 29, 2012, VOISIN was at a warehouse
in Brooklyn located at 305 East 89th Street, Brooklyn, New York
from 5:30 p.m.  At approximately 8:16 p.m., he traveled to
Manhattan and ultimately to New Jersey.  At approximately 9:46
p.m., VOISIN stopped at a location in New Jersey off Route 17.
He waited at that location until 10:46 p.m.  He then returned to
the warehouse located at 305 East 89th Street, Brooklyn, New
York.  Toll records indicate that on May 30, 2012, VOISIN stopped
using PHONE 2.

      11.  The location data that agents have received
pursuant to the April 13, 2012 order from Pima County has
facilitated surveillance and allowed the agents to identify
VOISIN.  Agents identified VOISIN as the user of the SUBJECT
TELEPHONE by conducting surveillance on locations where the
SUBJECT TELEPHONE was located.  On at least ten occasions agents
observed VOISIN at locations consistent with location data for
the SUBJECT TELEPHONE.  Location data for the SUBJECT TELEPHONE
also indicates that each night, except May 29, 2012, the SUBJECT
TELEPHONE is located at 116-28 Lovingham Place, St. Albans, New
York.  Records checks indicate that to be the address of Arleana

Pierre.  Police reports indicate that Pierre is the ex-wife of
VOISIN.  In addition, VOISIN has been observed on numerous
occasions driving a Mercedes Benz SUV registered to Pierre.  The
CI was also shown a photograph of VOISIN and identified him as
SAVE-RENDON's customer in New York.

      12.  The location data received pursuant to the April
13, 2012 order has also allowed agents to identify locations
related to the drug trafficking operation, including the
warehouse on 89th Street and the intended meet location for the
May 29, 2012 transaction.

      13.  There is therefore probable cause to believe that
the REQUESTED INFORMATION will lead to evidence regarding the
activities described above.  The REQUESTED INFORMATION is
necessary to assist law enforcement agents in conducting
surveillance; determine the location of possible stash houses;
and identify co-conspirators.

## AUTHORIZATION REQUEST

      14.  WHEREFORE, pursuant to Federal Rule of Criminal
Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), it is requested that
the Court issue a warrant and Order authorizing agents to obtain
the REQUESTED INFORMATION for a period of 30 days.

      15.  IT IS FURTHER REQUESTED that the Court direct the
Service Provider to assist law enforcement by providing all
information, facilities and technical assistance needed to

ascertain the REQUESTED INFORMATION, and further direct the service provider to initiate a signal to determine the location of the SUBJECT TELEPHONE on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement officer serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the SUBJECT TELEPHONE, for a period of 30 days. Reasonable expenses incurred pursuant to this activity will be processed for payment by DEA.

16. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONE outside of daytime hours.

17. IT IS FURTHER REQUESTED, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the SUBJECT TELEPHONE would seriously

13

jeopardize the ongoing investigation, as such disclosure would give the targets of the investigation an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from and evade prosecution. Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

18. IT IS FURTHER REQUESTED that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations, and not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums. Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change

14

patterns of behaviour, and notify confederates.

19. IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, it is further requested that the Court issue an Order commanding Sprint Nextel Communications not to notify any person (including the subscribers or customers of the account listed in the attached warrant) of the existence of the attached warrant until further order of the Court.

Dated: Brooklyn, New York
June 15, 2012

Justin Eckert
Special Agent
Drug Enforcement Administration

Sworn to before me the 15thday of June, 2012

s/Ramon E. Reyes, Jr.

HON. RAMON E. REYES
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property To Be Searched

1.    The cellular telephone assigned call number (310) 357-5229, Urban Fleet Mobile Identifier 124*851*5167, with IMSI 316010168988131  (the "SUBJECT TELEPHONE"), whose wireless service provider is Sprint Nextel Communications, a company headquartered at 6200 Sprint Parkway, Overland Park, Kansas.

2.    Information about the location of the SUBJECT TELEPHONE that is within the possession, custody, or control of Sprint Nextel Communications including information about the location of the cellular telephone if it is subsequently assigned a different call number.

16

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the SUBJECT TELEPHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the SUBJECT TELEPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint Nextel Communications, Sprint Nextel Communications is required to disclose the Location Information to the government. In addition, Sprint Nextel Communications must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint Nextel Communications's services, including by initiating a signal to determine the location of the SUBJECT TELEPHONE on Sprint Nextel Communications's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint Nextel Communications for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. See 18 U.S.C. § 3103a(b)(2).

All of which constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841, 843, and 846.

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 12 MISC 393

- - - - - - - - - - - - - - - x

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AUTHORIZATION TO OBTAIN
LOCATION DATA CONCERNING A
MOBILE TELEPHONE ASSIGNED
NUMBER (310) 357-5229

TO BE FILED UNDER SEAL

ORDER

- - - - - - - - - - - - - - - x

Application having been made for a search warrant under
Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§
2703(c)(1)(A) for information about the location of the cellular
telephone assigned call number 310-357-5229, Urban Fleet Mobile
Identifier 124*851*5167, IMSI 316010168988131, which has no
subscriber information (the "SUBJECT TELEPHONE"), whose wireless
telephone service provider is Sprint Nextel Communications (the
"Service Provider"), as further described in Attachment B to the
search warrant (the "REQUESTED INFORMATION");

The Court finds that there is probable cause to believe
that the REQUESTED INFORMATION will constitute or lead to
evidence of violations of 21 U.S.C. 841, 843, and 846, as well as
to the identification of individuals who are engaged in the
commission of these offenses. The Court also finds that there is
reasonable cause to believe that providing immediate notification
of the execution of the warrant may seriously jeopardize an
ongoing investigation, including by giving targets an opportunity
to flee or continue flight from prosecution, destroy or tamper

with evidence, change patterns of behavior, or notify confederates.  See 18 U.S.C. §§ 2705(b)(2), 2705(b)(3) and 2705(b)(5).  Furthermore, the execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510).  To the extent that the warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

IT IS HEREBY ORDERED pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) that law enforcement officers, beginning at any time within ten days of the date of this Order and for a period not to exceed 30 days, may obtain the REQUESTED INFORMATION concerning the SUBJECT TELEPHONE, with said authority to extend to any time of the day or night as required, including when the SUBJECT TELEPHONE leaves the Eastern District of New York; all of said authority being expressly limited to ascertaining the physical location of the SUBJECT TELEPHONE and expressly excluding the contents of any communications conducted by the user(s) of the SUBJECT TELEPHONE.

It is further ORDERED that Sprint Nextel Communications (the "service provider") assist law enforcement by providing all information, facilities and technical assistance needed to ascertain the REQUESTED INFORMATION, including by initiating a signal to determine the location of the SUBJECT TELEPHONE on the

2

service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as the service provider accords the user(s) of the SUBJECT TELEPHONE.

It is further ORDERED that the Drug Enforcement Administration compensate the service provider for reasonable expenses incurred in complying with any such request.

It is further ORDERED that the Court's Order and the accompanying Affidavit submitted in support thereof be sealed until further Order of the Court, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on law enforcement officers, and other government and contract personnel acting under the supervision of such law enforcement officers, and the service provider as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the issuing judicial officer within 14 days after the termination of the monitoring period authorized by the warrant.

It is further ORDERED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3),

3

service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extension thereof.

It is further ORDERED under 18 U.S.C. § 2705(b) that Sprint Nextel Communications shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any other person, unless and until otherwise authorized to do so by the Court, except that Sprint Nextel Communications may disclose the attached warrant to an attorney for Sprint Nextel Communications for the purpose of receiving legal advice.

It is further ORDERED that this Order apply to any changed mobile telephone number subsequently assigned to the SUBJECT TELEPHONE within the period of this Order.

It is further ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

Dated:     Brooklyn, New York
           June 15, 2012

s/Ramon E. Reyes, Jr.

THE HONORABLE RAMÓN E. REYES
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK